KTF:RMU
F. #2024R00447

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
\* MARCH 3, 2025 \*
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

CATALINA CORONA,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. 25-CR-78
(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(2), 982(b)(1), 1028A(a)(1), 1028A(b), 1028A(c)(5), 1343, 1344, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p)); T. 28, U.S.C., § 2461(c))

Judge Nicholas G. Garaufis
Magistrate Judge Cheryl L. Pollak

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I. <u>The Defendant, the Victims and the Relevant Bank and Entities</u>

    1.    The defendant CATALINA CORONA was a resident of Queens, New York.

    2.    The defendant CATALINA CORONA had control over bank accounts in her name (collectively, the "Corona Accounts"), including but not limited to two bank accounts with Bank A, an entity the identity of which is known to the Grand Jury. Bank A was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"), and which did business in several states, including New York.

    3.    Victim-1, an individual whose identity is known to the Grand Jury, resided in Lawrence, New York, until his passing in 2022.

4.      Victim-2, an individual whose identity is known to the Grand Jury, was the spouse of Victim-1 and resided in Lawrence, New York.  Victim-1 and Victim-2 had control over their two joint bank accounts with Bank A (collectively, the "Victim Accounts").

II.     Overview of the Scheme

5.      Beginning in or around the early 2000s and continuing through approximately April 2024, the defendant CATALINA CORONA was employed by Victim-1 and Victim-2 as a personal assistant and secretary.

6.      Between approximately January 2017 and April 2024, while working for Victim-1 and Victim-2, the defendant CATALINA CORONA engaged in a scheme to defraud Victim-1 and Victim-2 by (i) depositing forged checks purportedly signed by Victim-2 written out to "cash" into the Corona Accounts, and (ii) transferring funds directly from the Victim Accounts into the Corona Accounts.  To deposit the forged checks, CORONA took a picture of the forged checks and used Bank A's mobile application to deposit the funds from the Victim Accounts into the Corona Accounts.  Several of these transactions initiated in the Eastern District of New York.

7.      In order to gain access to the Victim Accounts, the defendant CATALINA CORONA misrepresented herself as Victim-2 to Bank A.  For example, in calls with representatives of Bank A on or about July 22, 2019 and September 12, 2023, CORONA misrepresented herself as Victim-2 by providing Victim-2's name as her own, and Victim-2's social security number.

8.      On or about April 3, 2024, the defendant CATALINA CORONA called Bank A in response to fraud alerts that she had received related to a check that CORONA had

deposited in the Corona Accounts from one of the Victim Accounts. The check, which was in the amount of $1,500, was made out to "cash" and was purportedly signed by Victim-2.

9. During the April 3, 2024 call, the defendant CATALINA CORONA initially informed the Bank A representative that CORONA had written the check, but the check was payable from someone else. CORONA then denied making the check out to "cash," despite having stated earlier on the call that she had.

10. Later that same day, April 3, 2024, Victim-2 received a phone call from a representative of Bank A to verify the validity of a check made out for $1,500 and payable to "cash." Victim-2 asked the Bank A representative to provide her with the details of the check in question. The Bank A representative provided those details and Victim-2 confirmed that the check did not match up with the copies of checks in Victim-2's possession. Victim-2 informed the Bank A representative that she had not written the check, and it should not be accepted.

11. Victim-2 then placed the Bank A representative on hold and called the defendant CATALINA CORONA. Victim-2 asked CORONA if she had any knowledge of the fraudulent check. CORONA said that she would talk to Bank A to straighten out the issue, and that it was possible she had made a mistake. CORONA informed Victim-2 that she would pay Victim-2 back.

12. After Vicitm-2 resumed the call with the Bank A representative, the Bank A representative proceeded to tell Victim-2 that there were a number of questionable checks made out to "cash" payable from one of the Victim Accounts.

13. Further investigation revealed that between approximately January 2017 and April 2024, the defendant CATALINA CORONA had fraudulently obtained approximately

$10 million from the Victim Accounts. CORONA spent a portion of the fraudulently obtained proceeds on luxury items, such as handbags and apparel, as well as personal expenses.

## COUNTS ONE THROUGH FIVE
(Wire Fraud)

14. The allegations contained in paragraphs one through 13 are realleged and incorporated as if fully set forth in this paragraph.

15. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant CATALINA CORONA, together with others, did knowingly and intentionally devise a scheme and artifice to defraud Victim-2 and to obtain money and property from Victim-2 by means of one or more materially false and fraudulent pretenses, representations and promises.

16. For the purpose of executing such scheme and artifice, the defendant CATALINA CORONA, together with others, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, as described below:

| COUNT | APPROXIMATE DATE | WIRE COMMUNICATION |
|---|---|---|
| ONE | June 1, 2023 | A mobile deposit of funds from one of the Victim Accounts to one of the Corona Accounts initiated in Lynbrook, New York for $661.48 |
| TWO | June 15, 2023 | A mobile deposit of funds from one of the Victim Accounts to one of the Corona Accounts initiated in Lynbrook, New York for $8,900 |
| THREE | June 22, 2023 | A mobile deposit of funds from one of the Victim Accounts to one of the Corona Accounts initiated in Lynbrook, New York for $9,450 |
| FOUR | June 27, 2023 | A mobile deposit of funds from one of the Victim Accounts to one of the Corona Accounts initiated in Lynbrook, New York for $9,750 |

| COUNT | APPROXIMATE DATE | WIRE COMMUNICATION |
|---|---|---|
| FIVE | June 29, 2023 | A mobile deposit of funds from one of the Victim Accounts to one of the Corona Accounts initiated in Lynbrook, New York for $9,750 |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT SIX
(Bank Fraud)

17. The allegations contained in paragraphs one through 13 are realleged and incorporated as if fully set forth in this paragraph.

18. In or about and between January 2017 and April 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CATALINA CORONA, together with others, did knowingly and intentionally execute and attempt to execute a scheme or artifice to defraud Bank A, the deposits of which were insured by the FDIC, and to obtain moneys, funds, credit and other property owned by, and under the custody and control of, Bank A by means of one or more materially false and fraudulent pretenses, representations and promises.

(Title 18, United States Code, Sections 1344, 2 and 3551 et seq.)

## COUNT SEVEN
(Aggravated Identity Theft)

19. The allegations contained in paragraphs one through 13 are realleged and incorporated as if fully set forth in this paragraph.

20. In or about and between January 2017 and April 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CATALINA CORONA, together with others, during and in relation to the crimes charged in Counts One through Six, did knowingly and intentionally transfer, possess and use, without

lawful authority, one or more means of identification, to wit: the name and social security number belonging to Victim-2, knowing that these means of identification belonged to Victim-2.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), 1028A(c)(5), 2 and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS ONE THROUGH FIVE

21. The United States hereby gives notice to the defendant that, upon her conviction of any of the offenses charged in Counts One through Five, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

22. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNT SIX

23. The United States hereby gives notice to the defendant that, upon her conviction of the offense charged in Count Six, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2), which requires any person convicted of such offense, to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

24. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

8

(Title 18, United States Code, Sections 982(a)(2) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

/signed/
FOREPERSON

By David Pitluck, Asst. U.S. Attorney

JOHN J. DURHAM
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK